## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN MICHIGAN

HEATHER HEWITT,

      Plaintiff,

                                    Case No. 2:22-cv-11774

v.

                                    Hon. Nancy G. Edmunds

CLEARY UNIVERSITY,

      Defendant.

| | |
|---|---|
| Batey Law Firm, PLLC | Jackson Lewis P.C. |
| SCOTT P. BATEY (P54711) | MARLO JOHNSON ROEBUCK (P65640) |
| Attorneys for Plaintiff | LAUREN V. PARROTTINO (P85387) |
| 30200 Telegraph Road, Suite 400 | Attorneys for Defendant |
| Bingham Farms, MI 48025 | 2000 Town Center, Suite 1650 |
| Phone: (248) 540-6800 | Southfield, MI  48075 |
| Fax: (248) 540-6814 | Phone: (248) 936-1900 |
| sbatey@bateylaw.com | marlo.roebuck@jacksonlewis.com |
| | lauren.parrottino@jacksonlewis.com |

## DEFENDANT CLEARY UNIVERSITY'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Cleary University ("Defendant" or "Cleary"), through its undersigned counsel, moves for Summary Judgment of Plaintiff's claims pursuant to Fed. R. Civ. P. 56(c).  In support of its Motion, Cleary relies upon the attached Brief in Support of its Motion for Summary Judgment and upon the pleadings on file with this Court. In particular, Plaintiff's sex and age discrimination claims are wholly without merit and summary judgment in favor of Cleary is appropriate

because the undisputed record evidence establishes that:

- As the director of food services, Plaintiff was expected to set the tone for the work environment among her team and treat her subordinates with dignity and respect;

- Notwithstanding these legitimate expectations, multiple employees complained that Plaintiff treated them in an abusive, demeaning and threatening manner;

- Cleary warned Plaintiff and gave her multiple opportunities to improve her performance to an acceptable level;

- After another incident of mistreating her subordinate employees by requiring them to work outside during a thunderstorm was brought to Cleary's attention by the parents of a special needs employee on her team, Plaintiff's employment was terminated;

- Plaintiff cannot establish that the legitimate, non-discriminatory reasons for her termination -- namely creating a toxic and hostile work environment and endangering her subordinates –were a pretext for gender or age discrimination;

- Plaintiff was not subjected to severe and pervasive conduct on the basis of her gender when she relies upon two allegedly made isolated comments;

- Plaintiff never advised anyone in management at Cleary during her employment of any alleged harassment despite that Cleary had a procedure in place for doing so.

Counsel for Defendant sought concurrence in the relief requested from Plaintiff on July 30, 2023 but such concurrence was not forthcoming thereby necessitating the filing of this Motion.

WHEREFORE, Defendant Cleary University respectfully requests that the Court grant its Motion for Summary Judgment, dismiss Plaintiff's Complaint in its

entirety, with prejudice, and award Defendant its costs and fees incurred in

defending against this action.

Respectfully submitted,
JACKSON LEWIS P.C.

BY:  /s/ Marlo Johnson Roebuck
MARLO JOHNSON ROEBUCK (P65640)
LAUREN V. PARROTTINO (P85387)
Attorneys for Defendant
2000 Town Center, Suite 1650
Southfield, MI 48075
248-936-1900

Dated:  July 31, 2023      marlo.roebuck@jacksonlewis.com
Lauren.parrottino@jacksonlewis.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN MICHIGAN

HEATHER HEWITT,

       Plaintiff,

                                 Case No. 2:22-cv-11774

v.

                                 Hon. Nancy G. Edmunds

CLEARY UNIVERSITY,

       Defendant.

| | |
|---|---|
| Batey Law Firm, PLLC | Jackson Lewis P.C. |
| SCOTT P. BATEY (P54711) | MARLO JOHNSON ROEBUCK (P65640) |
| Attorneys for Plaintiff | LAUREN V. PARROTTINO (P85387) |
| 30200 Telegraph Road, Suite 400 | Attorneys for Defendant |
| Bingham Farms, MI 48025 | 2000 Town Center, Suite 1650 |
| Phone: (248) 540-6800 | Southfield, MI  48075 |
| Fax: (248) 540-6814 | Phone: (248) 936-1900 |
| sbatey@bateylaw.com | marlo.roebuck@jacksonlewis.com |
| | lauren.parrottino@jacksonlewis.com |

## BRIEF IN SUPPORT OF DEFENDANT CLEARY UNIVERSITY'S
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................... 1

II.    STATEMENT OF RELEVANT FACTS ..................................... 2

    A.    Cleary Prohibits Discrimination, Harassment and Retaliation in the Workplace ................................................... 2

    B.    Plaintiff Was An Average Employee Who Assumed Enhanced Duties When Her Male Supervisor Left ........................... 3

    C.    The Promotion Inflates Plaintiff's Ego And She Begins to Bully Her Staff. ............................................................. 7

    D.    Despite A Formal Warning and Multiple Discussions With Her Supervisor, Plaintiff Continues To Mistreat Her Subordinates, Leading To Her Termination ........................................ 10

    E.    Cleary Has Terminated Employees For Violating Company Policies, Irrespective Of Sex or Age. ............................. 13

III.    LEGAL ARGUMENT ..................................................... 13

    A.    Standard of Review for Summary Judgment. .................... 13

    B.    Plaintiff's Sex And Age Discrimination Claims Are Devoid Of Any Competent Evidence That She Was Terminated Because Of Her Sex Or Age, And Therefore, Must Be Dismissed ............... 15

        1.    Plaintiff Cannot Establish Her Prima Facie Burden. ............. 15

        2.    Plaintiff's Employment Was Terminated for Legitimate Non-Discriminatory Reasons That She Cannot Establish Were a Pretext for Sex and Age Discrimination. ................... 18

    C.    Plaintiff's Sex Hostile Work Environment Claim Also Fails Because She Cannot Establish Severe And Pervasive Conduct Or Respondeat Superior. ............................................. 21

IV.    CONCLUSION ............................................................ 25

# INDEX OF CONTROLLING AUTHORITY

**Page(s)**

**Cases**

*Adusumilli v. City of Chicago*,
    164 F.3d 353 (7th Cir. 1998) ....................................................................24

*Arendale v. City of Memphis*,
    519 F.3d 587 (6th Cir. 2008) ....................................................................21

*Arnold v. City of Columbus*,
    515 F. App'x 524 (6th Cir. 2013) ........................................................22, 25

*Black v. Zaring Homes, Inc.*,
    104 F.3d 822 (6th Cir.) ............................................................................24

*Braithwaite v. Timken Co.*,
    258 F.3d 488 (6th Cir. 2001) ....................................................................19

*Burlington Industries v. Ellerth*,
    524 U.S. 754 (1998) ................................................................................24

*Burnett v. Tyco Corp.*,
    203 F.3d 980 (6th Cir. 2000) ....................................................................24

*Burnside v. Fashion Bug of Detroit*,
    473 Mich 863 ..........................................................................................19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................14

*Chen v. Dow Chem Corp.*,
    580 F.3d 394 (6th Cir. 2009) ....................................................................18

*Clark v. United Parcel Service, Inc.*,
    400 F.3d 341 (6th Cir. 2005) ....................................................................23

*DiCarlo v. Potter*,
    358 F.3d 408 (6th Cir. 2004) ....................................................................15

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) ............................................................................22, 24

*Gross v. FBL Financial Services*,
    557 U.S. 167 (2009) ................................................................................15

*Harris v. Forklift Systems, Inc.*,
510 U.S. 17 (1993)..................................................................................22, 23

*Hawkins v. Anheuser-Busch, Inc.*,
517 F.3d 321 (6th Cir. 2008) ...................................................................25

*Marsh v. Assoc. Estates Realty*,
No. 10-14120, 2012 U.S. Dist. LEXIS 48453 (E.D. Mich., Apr. 5, 2012)............................14

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)..................................................................................15

*Mitchell v. Toledo Hosp*,
964 F.2d 577 (6th Cir. 1992) ...................................................................16

*Morris v. Oldham County Fiscal Court*,
201 F.3d 784 (6th Cir. 2000) ...................................................................23

*Oncale v. Sundowner Offshore Servs.*,
523 U.S. 75 (1998)...................................................................................22

*Parks v. UPS Supply Chain Solutions, Inc.*,
No. 14-5609, 2015 U.S. App. LEXIS 6382 (6th Cir. Apr. 17, 2015)....................................19

*Rojas v. The Roman Catholic Diocese*,
660 F.3d 98 (2d Cir. 2011)........................................................................14

*Scott v. Harris*,
550 U.S. 372 (2007)..................................................................................14

*Shepherd v. Comptroller of Pub. Accounts*,
168 F.3d 871 (5th Cir.) .............................................................................24

*Smith v. Allstate Ins. Co.*,
195 Fed. Appx. 389 (6th Cir. 2006)...........................................................18

*Smith v. Chrysler*,
155 F.3d 799 (6th Cir. 1998) ...............................................................19, 20

*Stone v. West*,
133 F.Supp.2d 972 (E.D. Mich. 2001)......................................................23

*United States v. Crosby*,
59 F.3d 1133 (11th Cir. 1995) .................................................................17

**Statutes**

Age Discrimination under the Age Discrimination Act of 1967 .....................................1

Title VII and the Elliott Larsen Civil Rights Act............................................................................1

**Other Authorities**

Fed. R. Civ. P. 56(c) ..............................................................................................................1, 13

## STATEMENT OF ISSUES PRESENTED

1. Should the Court grant summary judgment on Plaintiff's sex and age discrimination claims where Plaintiff cannot establish her prima facie burden because she was not meeting her employer's legitimate expectations and no similarly situated employee outside her protected classes were treated more favorably?

Defendant says: "Yes"

2. Should the Court grant summary judgment on Plaintiff's sex and age discrimination claims where Plaintiff's employment was terminated for legitimate, non-discriminatory reasons wholly unrelated to her protected characteristics – namely creating a toxic and hostile work environment and endangering her subordinates – for which Plaintiff cannot establish was pretextual?

Defendant Cleary says: "Yes"

3. Should the Court grant summary judgment on Plaintiff's gender hostile work environment claim where the undisputed material facts establish that as a matter of law Plaintiff was not subjected to unlawful harassment that was severe and pervasive?

Defendant Cleary says: "Yes"

4. Should the Court grant summary judgment on Plaintiff's gender hostile work environment claim where the undisputed material facts establish that despite being aware of Cleary's prohibition on unlawful harassment in the workplace Plaintiff failed to report any alleged harassment to anyone in management at Cleary during her employment?

Defendant Cleary says: "Yes"

## I.   <u>INTRODUCTION</u>

Defendant Cleary University ("Defendant" or "Cleary") employed Plaintiff Heather Hewitt ("Plaintiff" or "Hewitt") as the Director of Food Services at its Howell, MI campus. She repeatedly treated her staff in a toxic and hostile manner and was warned about her actions. Cleary ultimately terminated Hewitt's employment after an investigation revealed that she endangered her staff's safety by forcing them to work outside, over their objections, in a severe thunderstorm. Notwithstanding the legitimate, non-discriminatory reasons for her termination, Hewitt has filed this two-count suit alleging Sex Discrimination in violation of Title VII and the Elliott Larsen Civil Rights Act ("ELCRA") (Count I) and Age Discrimination under the Age Discrimination Act of 1967 ("ADEA") (Count II). (ECF 1, PageID.1, Complaint.)

Hewitt was an average performer but showed little improvement (if any at all) when given feedback from her supervisors as shown in her performance reviews. Although she attempts to paint herself as a well-intentioned, empathetic, and dignified leader, she was, in actuality, the subject of multiple complaints for (1) endangering the safety of her team members and (2) creating a negative work environment for other Cleary employees.

In addition, the admissible evidence of record establishes that Plaintiff will not be able to show that a similarly situated younger male employee was treated

more favorably because Cleary has terminated employees, irrespective of age or gender, for failure to follow Cleary policies. Moreover, the number of women employees in senior leadership roles belie any inference that she was terminated because of her sex. Indeed, all individuals involved in the decision to terminate her employment are female, and the decisionmaker is also in the same age-protected category.

Finally, although Hewitt alleges that she was the target of severe and pervasive harassment while at Cleary, the two comments she claims to have been subjected to do not rise to the level of actionable conduct as a matter of law and she never complained of such conduct to higher management or Human Resources.

Because Plaintiff's claims fail as both a matter of law and fact, Cleary respectfully requests that this Court dismiss Plaintiff's claims, with prejudice, and award Cleary its costs and fees incurred in defending against this frivolous lawsuit.

## II.     STATEMENT OF RELEVANT FACTS

### A.     Cleary Prohibits Discrimination, Harassment and Retaliation in the Workplace.

Cleary maintains robust policies designed to eradicate discrimination and harassment from the workplace. Its Equal Employment Opportunity policy provides that "[e]mployment selections and related decisions are made without

regard to race, color, creed, religion, national origin, sex, gender, sexual orientation, gender identity, national origin, age, marital status, disability status that does not, with or without reasonable accommodation, affect an employee's ability to perform the essential functions of the job, Genetic Information & Testing, Family & Medical Leave, protected veteran status or any other reason prohibited by law." (**Ex. 1**, Employee Handbook, p. 5) Cleary also "prohibits harassment of its employees based on any characteristic protected by federal, state or local law." (*Id.*, p. 22) Indeed, it "is committed to a work environment in which all individuals are treated with respect and dignity." (*Id.*)

When an employee's performance falls beneath Company standards, Cleary maintains a Corrective Action Policy designed to document discussions. Discipline is to be issued in four steps: (1) first verbal warning; (2) second written warning; (3) suspension and/or final written warning; and (4) recommendation for termination of employment. (*Id.*, p. 38) Steps may be skipped provided that the Human Resources Director or President approve. (*Id.*)

### B.   Plaintiff Was An Average Employee Who Assumed Enhanced Duties When Her Male Supervisor Left.

Cleary hired Plaintiff (DOB:4/8/1977) on or about November 7, 2016 as a food and beverage manager. (**Ex. 2**, Offer Letter.) At that time, she reported directly to Jeffrey Bane. She received Meets Expectations ratings on her 2017 and 2018 performance reviews. In 2017, among other notes regarding Hewitt's

management style, Bane noted that "Heather should be intentional about adapting her managerial style to different types of employees and be comfortable that minor team mistakes do not personally reflect on her abilities." (**Ex. 3**, Performance Reviews, p. 6)

Though settled into her role as food and beverage manager, on July 6, 2018, Plaintiff was issued a Personnel Action Form citing a "discussion regarding performance" relating to an issue where Hewitt interfered with Cleary's prospective clientele by placing additional restrictions on events which caused a loss of business for Cleary. (**Ex. 4**, Personnel Action Form.)  Her supervisor stated that "[i]n talking with a client who took their event elsewhere, I had concerns that Heather was sharing too much information….Heather denies that she told the client those things but the details in which the client relayed the conversation to me gave me enough concern to have [this] discussion." (*Id*.) In her 2018 performance review, Bane also implied tension in Hewitt's department by noting that "Heather can help reduce conflict and tension in the department by not engaging in managerial discussion with employees". **Ex. 3**, Performance Reviews, p. 12)

Effective June 1, 2020, Plaintiff began reporting to Heather Bateman, then-VP of student affairs, due to Bane's departure. (**Ex. 5**, Personnel Action Form.) Cleary split up Bane's previous duties between Hewitt and her colleague, George Horn (DOB 4/16/1967).  (**Ex. 6**, Bateman at 19; **Ex. 7**, Horn at 9.)  Hewitt's new

title became director of food services, while Horn assumed the maintenance portion of Bane's duties. (**Ex. 6,** Bateman at 19; **Ex. 7**, Horn at 9.) Both Horn and Hewitt were placed into their new roles by Interim President Emily Barnes, and Hewitt was in this role at the time of her departure from Cleary.[1] (**Ex. 6**, Bateman at 10.)

In the director of food services position, Plaintiff oversaw the hospitality operations for the Johnson Center's external and internal events and the operations of the campus student dining service. (**Ex. 8**, Director of Food Services Description.) She was responsible for, among other things, (1) planning, directing and coordinating the activities of production employees in order to prepare and deliver finished food product to clients; (2) directly supervising employees with responsibility for training; and (3) ensuring appropriate sanitation standards and requirements are met. (*Id.*) As director of food services, Hewitt was also expected to abide by Cleary's policies and treat her subordinates with dignity and respect and ensure workplace safety standards. (**Ex. 9**, Hewitt at 113-114; **Ex. 1**, Employee Handbook at 22; **Ex. 8**.) Hewitt admits that she was "responsible to lead the team" and that she set the tone for her department. (**Ex. 9**, Hewitt at 112-114.) Hewitt had eight (8) direct reports at this time, including the following individuals: Devin

---

[1] Plaintiff's effective date of her position change to director of food services is June 1, 2020, but the Personnel Action Form was not approved until July 7, 2020. Either way, this document demonstrates Plaintiff's enhanced duties began, at the very earliest, in June 2020 and not in May 2021, as she alleges.

Bachman (male), Bonnie Szpuk (female), Myia Wasak (female), and Brittney Bannow (female). (**Ex. 10**, Declaration of Erica Smith, ¶¶9; **Ex. 9**, Hewitt at 117-118.)

In the new position, Hewitt worked in tandem with Horn, the facilities manager at Cleary. Hewitt and Horn worked closely together but the two did not have a reporting relationship as they both reported to Bateman. (**Ex. 7**, Horn at 8, 10; **Ex. 9**, Hewitt at 33.) At some point, their offices were next to each other and for event coordination, they worked together. Hewitt's office was slated to move in June 2021 to make room for the new bookstore, the Cougar's Den. (Ex. 9, Hewitt at 32-33.)

Plaintiff alleges that during her "promotion process", Interim President Emily Barnes told her that she would be considered a "bitch" because she was a woman with a strong personality but that if she were a man with a strong personality, then that would not be noticed. (**Ex. 9**, Hewitt at 20-21; **Ex. 11**, Hewitt's Notes.) Plaintiff misrepresented to the EEOC that her promotion and this conversation occurred in or around May 2021 – close in time to her termination -- when in fact, she was promoted the year prior. (**Ex. 12**, Initial/Amended EEOC Charges.) While Plaintiff claimed not to remember when this conversation took place at her deposition, (**Ex. 9**, Hewitt at 20-21.) Cleary's records establish that Plaintiff's position was changed to director of food services effective June 1, 2020.

6

(**Ex. 5; Ex. 9**, Hewitt at 105.) Furthermore, while Plaintiff alleges in this litigation that Barnes was referring to all Cleary employees as being hostile toward female leaders, at her deposition Plaintiff testified that Barnes was referring only to the chair of the culinary department, Dawnmarie Chmiel-Yelcho. (**Ex. 9**, Hewitt at 21-22; ECF 1, Page ID.1, Complaint, at ¶10.)

Hewitt never brought this alleged comment to human resources or her supervisor's attention. (**Ex. 6**, Bateman at 10-11.) Furthermore, Hewitt swore under the penalty of perjury that the first instance of any alleged discrimination occurred on June 1, 2021. (**Ex. 12**, Initial/Amended EEOC Charges.) So, even if Barnes made this alleged comment, it would thus be barred from being considered in this action because it was prior to June 1, 2021.

### C. The Promotion Inflates Plaintiff's Ego And She Begins to Bully Her Staff.

Almost immediately after Hewitt assumed her new role as director of food services, she was the recipient of multiple internal complaints about her management style. On July 29, 2020, an employee called human resources and described an incident where Hewitt was overheard speaking to two other employees (Brittney Bannow and Myia Wasak) in a "belittling, putting them down, and unprofessional" tone. (**Ex. 13**, Complaint Memorandum; **Ex. 10**, Smith at ¶¶11-12.) The following day, on July 30, 2020, Bannow and Wasak met with human resources. (**Ex. 13**, Complaint Memorandum) Bannow and Wasak

complained that Plaintiff treated them in an unprofessional and childish manner, refused to speak to them when they asked her questions, and told them on more than one occasion that she was the boss and that if they did not like it, then perhaps they should not work there anymore. (*Id.*) Wasak expressed fear of Plaintiff. (*Id.*) Because Cleary's human resources department substantiated the allegations against Plaintiff, Hewitt was issued a Formal Warning on August 12, 2020. (**Ex. 10**, Smith at ¶¶11-13; **Ex. 14**, Formal Warning.) She was reminded of Cleary's no retaliation policy and instructed to treat her employees with respect, be polite, and foster a welcoming work environment. She was also instructed to refrain from using language that is degrading or belittling. (**Ex. 10**, Smith at ¶13)

Employees continued to complain about her treatment of them. In October 2020, Dawnmarie Chmiel-Yelcho, the academic chair of the culinary department, complained that she was aggressive, verbally abusive, and discriminatory to different lifestyles, age, and women. (**Ex. 15**, October Investigation Notes.) She provided examples of multiple inappropriate questions Plaintiff asked candidates regarding their gender and age during interviews. (*Id.*) Human resources again opened an investigation and substantiated the allegations against Plaintiff. (**Ex. 10**, Smith at ¶14-15) Bateman, as Hewitt's supervisor, was made aware of the ongoing investigation and prepared a 30-Day Action Plan for Hewitt. Bateman and Erica Smith, director of human resources, met with Plaintiff on October 28, 2020 to

8

discuss the contents. (**Ex. 16**, Meeting Invite; **Ex. 6**, Bateman at 6, 44.) Ultimately, Bateman and Smith decided to give Hewitt another chance to improve without the formalities of a Plan. (**Ex. 6**, Bateman at 44; **Ex. 10**, Smith at ¶17.)  The next day, Plaintiff wrote to Smith and Bateman requesting a few days off to "wrap her head around" the meeting the previous day. (**Ex. 17**, 10/29/20 Correspondence.) Smith responded understandingly as Cleary wanted to foster a supportive environment for Hewitt to improve; however, Bateman noted that the conversation was "very difficult" because Hewitt was not open to constructive criticism from her subordinates or Bateman.  (**Ex. 6**; Bateman at 18)

Despite hopes for improvement, the abusive and toxic environment did not abate. A few months later, in mid-January 2021, Wasak complained that Plaintiff had threatened their jobs by telling them that their contracts were up for review that summer and she was ready for "new blood." (**Ex. 18**, 1/11/21 Correspondence.) Smith then met with Hewitt's team to reassure them of their employment. (**Ex. 10**, Smith at ¶18.)

On April 23, 2021, Ashley McQuillen raised a concern as to why she had not been selected for the open kitchen manager position. Plaintiff had hired Thomas Srock for the kitchen manager position in January 2021, but he left after approximately 90 days. McQuillen expressed that she had taken on more responsibilities in her position since he left and complained that Hewitt had not

given her the courtesy of explaining what was being decided about that position. (**Ex. 10**, Smith at ¶19.)

In May and June 2021, Wasak and Bannow both stated their intent to resign their employment with Cleary. On her exit interview form, Wasak noted the following reasons for seeking alternate employment: "lack of appreciation", "inconsistent behavior and direction from supervisor", "leadership", "management style created a toxic work environment". (**Ex. 10**, Smith at ¶20.)

On or about June 16, 2021, employees continued to raise concerns about Plaintiff when Smith asked them how things were going. McQuillen responded that things were "awful." (**Ex. 10**, Smith at ¶21.)

### D. Despite A Formal Warning and Multiple Discussions With Her Supervisor, Plaintiff Continues To Mistreat Her Subordinates, Leading To Her Termination.

In preparation for Cleary's signature fundraising event, "Vehicle to a Better Future", Hewitt and Horn were engaged in setting up tables, an outdoor stage, and food services, among other duties for the event.  Hewitt alleges that on June 14 or 15, 2021, Horn laughingly remarked "that's why a woman shouldn't do a man's job" when a trailer came unhitched from the van that Hewitt was driving on campus.  (**Ex. 9**, Hewitt at 23.)  Horn, at his deposition, could not remember if he made such a remark, but testified it would have been made in jest. (**Ex. 9**, Hewitt at 20-21; **Ex. 7**, Horn at 10.) Plaintiff never complained to anyone at Cleary about the

alleged comment and retorted "you must have a big pair of balls." (**Ex. 9**, Hewitt at 24.)

The day following the "Vehicle to a Better Future" event, the employees of the facilities and food services teams arrived at Cleary the morning of June 18 to start clearing Cleary's stadium which had served as the event space. (**Ex. 7**, Horn at 13; **Ex. 9**, Hewitt at 194.) Despite that it was thundering and lightning outside, Plaintiff directed her staff (Wasak, Bannow, Szpuk and Bachman) to pack up the tables and chairs outside. (**Ex. 7**, Horn at 12-14; **Ex. 9**, Hewitt at 191-194; **Ex. 20**, Bachman at 9.) Horn pulled his team from the field to wait the storm out inside the Wellness Building as the wind, rain, thunder, and lightning created unsafe conditions for his team and he continued running errands around campus in his truck. (**Ex. 7**, Horn at 12-15.)

Meanwhile, Hewitt and her team members remained on the field, clearing the metal chairs and tables in the thunderstorm for at least three hours.  (**Ex. 9**, Hewitt at 194; **Ex. 20**, Bachman at 8.) Szpuk protested that they should not continue working during the storm. (**Ex. 20**, Bachman at 9-10.) And Wasak and Bannow complained to Horn about having to work in the rain. (**Ex. 7**, Horn at 18.) But Hewitt insisted that they continue. By the time Hewitt's team finished clearing the field, they were soaked. (**Ex. 9**, Hewitt at 193.)

Szpuk took Bachman to her house because he does not drive and when his father arrived to see the condition that his son was in, he complained to Cleary on Bachman's behalf. (**Ex. 20**, Bachman at 11; **Ex. 10**, Smith at ¶23; **Ex. 21**, Correspondence from M. Mihailuk.)

Thereafter, on June 22, 2021, McQuillen informed Smith of what happened during the event clean up on the morning of June 18. (**Ex. 10**, Smith at ¶21; **Ex. 22**, 06/22/21 Smith's Meeting Notes.) And on June 24, 2021, Mitch Milhailuk, then safety coordinator, reported to Smith that Hewitt's team was outside in the storm in a "very dangerous situation". (Ex. 21.) Around this time, Smith also learned that Bachman's parents were upset about the situation, and Smith informed Bateman of the safety concerns. (**Ex. 10**, Smith at ¶¶24-25.) Bateman investigated. She had no reason to investigate whether Horn's facilities team was on the field during the storm because, no one complained about Horn and when she spoke to Horn after the event, he stated that the facilities team was pulled from clearing the field when Horn saw lightning. (**Ex.** 6, Bateman at 46-50.)

This was the last straw for Cleary and Plaintiff's employment was terminated effective July 2, 2021, for creating a hostile work environment and endangering subordinate employees.  (**Ex. 23**, Termination Letter; **Ex. 6**, Bateman at 38-39; **Ex. 10**, Smith at ¶27.) The decision to terminate her employment was made by Bateman (DOB 10/30/1974) with concurrence from Smith (DOB

10/27/1994). (**Ex. 10**, Smith at ¶26, 30, 6.) Bateman also discussed the events with

Barnes (DOB 10/24/1984), who supported the direction that Bateman chose. (**Ex.**

**10**, Smith at ¶26, 30) Plaintiff's sex and age played no role in the discharge

decision. (**Ex. 10**, Smith at ¶28.)

Bateman and Smith informed Plaintiff of her termination on June 30, 2021.

(**Ex. 19**, Smith's Notes; **Ex. 10**, Smith at ¶27.)  Immediately after the termination

meeting, Plaintiff returned to her office area, made a scene, and called Bonnie a

"traitor" and "backstabber." (**Ex. 9**, Hewitt at 204.)

E.    **Cleary Has Terminated Employees For Violating Company Policies, Irrespective Of Sex or Age.**

Cleary does not make termination decisions because of an employee's

protected characteristics. From January 2020 to January 2023, 11 employees under

Bateman's supervision were terminated for violating Cleary policies. Nine of the

11 of those employees identified as male, and six were under 40.  (**Ex. 10**, Smith at

¶35).

### III.   <u>LEGAL ARGUMENT</u>

A.    **Standard of Review for Summary Judgment.**

Under Fed. R. Civ. P. 56(c) a court must grant a party's motion for summary

judgment if "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of

law."  A non-movant must show sufficient evidence to create a genuine issue of

material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A mere scintilla of evidence is insufficient. Rather, "there must be evidence on which the [trier of fact] could reasonably find" for the non-moving party. *Id.* Summary judgment is appropriate "against a party who fails to make a showing essential to that party's case, and on which that party will bear the burden of proof." *Id*. at 322.

 "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). *See Rojas v. The Roman Catholic Diocese*, 660 F.3d 98, 106 (2d Cir. 2011) ("[W]here 'the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may pierce the veil of the complaint's factual allegations and dismiss the claim.'  To hold otherwise, and require district courts to allow parties to defeat summary judgment simply by testifying to the allegations in their pleadings … would 'license the mendacious to seek windfalls in the litigation lottery.'"); *Marsh v. Assoc. Estates Realty*, No. 10-14120, 2012 U.S. Dist. LEXIS 48453, at *21 (E.D. Mich., Apr. 5, 2012)("While the Court is aware of its obligation to view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party, this does not require the Court to accept as true plainly implausible allegations that are directly controverted by the record.").

**B.    Plaintiff's Sex And Age Discrimination Claims Are Devoid Of Any Competent Evidence That She Was Terminated Because Of Her Sex Or Age, And Therefore, Must Be Dismissed.**

**1.    Plaintiff Cannot Establish Her Prima Facie Burden.**

In the absence of direct evidence, to establish a *prima facie* case of sex or age discrimination, Plaintiff must show that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *DiCarlo v. Potter*, 358 F.3d 408, 414, 415 (6th Cir. 2004). If she meets this burden, then the burden shifts to Cleary to articulate a legitimate, non-discriminatory reason for her termination. Once it does so, the burden shifts back to Plaintiff to establish the proffered reason is a pretext for unlawful discrimination. Notwithstanding the *McDonnell Douglas* method of proof, at all times the burden remains on Plaintiff to establish that her sex was a motivating factor in her termination and "but for" her age she would not have been terminated. *Gross v. FBL Financial Services*, 557 U.S. 167 (2009).

As an initial matter, the only employment decision that Plaintiff can challenge is her termination. Under the penalty of perjury, she told the EEOC that the "earliest date of discrimination occurred on June 1, 2021." (**Ex. 9**, Hewitt at 54; **Ex. 12**, Initial/Amended EEOC Charges.) As such, any comments or employment

decisions prior to June 1, 2021 are barred by her sworn statement; and thus, are not before this Court.

Plaintiff's claim that she was unlawfully terminated should be dismissed. The essence of a discrimination case is that "similarly situated people have been treated differently" because of their membership in a protected group.  To be similarly situated, the employees "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp*, 964 F.2d 577, 583 (6th Cir. 1992).  Plaintiff points to Horn as a comparable and alleges that he also had his team cleaning up the stage and chairs after the Vehicle to a Better Future event. (**Ex.** 9, Hewitt at 145, 166.) But unlike Plaintiff's, Horn's employment record is devoid of any employee complaints to Human Resources or disciplinary issues. (**Ex. 10**, Smith at ¶31.)  Furthermore, no one complained that he allegedly required his employees to work outside in the thunderstorm like Plaintiff – and he denies doing so.  (**Ex. 7**, Horn at 12-15; **Ex. 6**, Bateman at 46-48.)

Plaintiff's reliance upon the fact that a male employee was hired to replace her and the alleged comments by Horn do not salvage her claims. (**Ex. 9**, Hewitt at 145-146) She admits that Bateman, the decisionmaker, and Smith, who concurred

in the decision, did not make any derogatory comments about women. (**Ex. 9**, Hewitt at 148-149) And she is not claiming to have heard anyone make any age derogatory remarks. (*Id.* at 164)

Her attempt to taint the termination decision by claiming that Horn discussed his concerns about her with Bateman and that Bateman wanted a younger male in her role are admittedly based upon nothing more than speculation and conjecture. (**Ex. 9**, Hewitt at 157, 159-163) Indeed, Cleary's record of women in leadership roles and Bateman's record of terminating employees irrespective of sex or age, belie any inference that Plaintiff's sex or age were factors in her termination. (**Ex. 10**, Smith at ¶33.)

Moreover, Bateman and Barnes are in the same sex and age protected categories as Plaintiff. (**Ex. 10**, Smith at ¶33.) Although not entirely dispositive, the fact that the individuals involved in the challenged employment decision are in the same protected category as Plaintiff makes her claim that Cleary acted out of sex animus implausible. See e.g., *United States v. Crosby*, 59 F.3d 1133, 1135 n. 4 (11th Cir. 1995) (reasoning that where a decision maker is of the same race as the adversely affected party, the plaintiff should present evidence that the decisionmaker "held members of his own race to a higher standard of conduct than members of another race").

Finally, her age discrimination claim fails for the additional reason that she testified that "it was not my age with [Bateman], I think it was my sex." (**Ex. 9**, Hewitt at 165) And Horn, the alleged comparable, is older than Plaintiff. (**Ex. 10**, Smith at ¶ 28.) In addition, her replacement, Root is in the same age-protected category as Plaintiff. (**Ex. 10**, Smith at ¶ 32.)

## 2. Plaintiff's Employment Was Terminated for Legitimate Non-Discriminatory Reasons That She Cannot Establish Were a Pretext for Sex and Age Discrimination.

Because Cleary has articulated legitimate, non-discriminatory reasons for the termination decision, the burden shifts back to Plaintiff to identify evidence from which a reasonable juror could conclude that Cleary's proffered reasons were merely a pretext for unlawful discrimination. *Chen v. Dow Chem Corp.*, 580 F.3d 394, 400 (6th Cir. 2009). To do so, Plaintiff must show by a preponderance of the evidence that (1) Cleary's proffered reason for her termination was false and (2) the real reason for her termination was intentional discrimination. *See Smith v. Allstate Ins. Co.*, 195 Fed. Appx. 389, 395 (6th Cir. 2006).

While Cleary anticipates that Plaintiff will contend that she was instructed to clean up the field by a specific time as an excuse for placing her employees in danger by requiring them to work outside during a thunderstorm, she cannot show pretext by merely disputing the allegations or questioning the validity of Cleary's investigation. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001); *Parks*

*v. UPS Supply Chain Solutions, Inc*., No. 14-5609, 2015 U.S. App. LEXIS 6382, at

\*14 (6th Cir. Apr. 17, 2015). ("An employee cannot avoid summary judgment by

challenging an employer's honest belief that he deserved discipline with

hypothetical theories, conjecture, or an unsupported denial of wrongdoing.")

(citing *Simpson v. Vanderbilt Univ*., 359 F. App'x 562, 570 (6th Cir. 2009)).

Instead, she must "put forth evidence which demonstrates that [Cleary] did not

'honestly believe' in the proffered [non-retaliatory] reason for its adverse

employment action." *Braithwaite,* 258 F.3d at 494. "In order to determine whether

the defendant had an 'honest belief' in the proffered basis for the adverse

employment action, [the] Court looks to whether the employer can establish its

'reasonable reliance' on the particularized facts that were before it at the time the

decision was made." *Id.* Courts, however, "do not require that the decisional

process used by the employer be optimal or that it left no stone unturned." *Smith v.*

*Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998).[2] "Rather, the key inquiry is whether

the employer made a reasonably informed and considered decision before taking

an adverse employment action." *Id.*, 155 F.3d at 807; *see also Caterpillar*, 496

---

[2] *See also Burnside v. Fashion Bug of Detroit*, 473 Mich 863, 873; 702 NW2d 154 (2005) (Taylor, C.J., concurring) ("[E]ven if one were to assume, *arguendo*, that [a co-worker] falsely accused [plaintiff] of [violating company policy], this does not inevitably lead to the conclusion that [the employer] harbored any discriminatory motive in deciding to fire [the plaintiff] on the basis of the accusation.  Rather, all that this would show is that [the employer's] decision to fire [the plaintiff] was based on inaccurate information, and it is not within the province of the courts to second-guess whether [the employer's] decision was 'wise, shrewd, prudent, or competent.'  Instead, they must focus only on whether [the employer's] decision was 'lawful,' that is, one that is not motivated by a 'discriminatory animus.'").

F.3d at 598-99.

Here, Cleary's decision to terminate Plaintiff's employment was reasonably informed, considered, and based on the particularized facts that were before it at the time the decision was made. Specifically, after warning Plaintiff on August 12, 2020 that her behavior toward her subordinates needed to improve, it continued to receive complaints that she was mistreating Cleary employees in October 2020, January 2021, May 2021 and June 2021. When a parent of a special needs employee on her team complained of him being "soaking wet" from being required by Plaintiff to work outside during a thunderstorm, an investigation was promptly commenced. The Safety Coordinator and others confirmed that Plaintiff required her subordinates to pack up tables and chairs during a downpour. Szpuk spoke up on her team's behalf and informed Plaintiff that they did not want to work during the storm, yet Plaintiff forced them to do so anyway. (Ex. 20, Bachman at 9-10.) Moreover, no one reported Horn for allegedly having his team work during the storm, and he denied doing so anyway. (**Ex. 6**, Bateman at 27, 46-48; **Ex. 7**, Horn at 12-15.)

Rather than point to any admissible evidence from which a jury might reasonably infer that the true motive for her termination was unlawful discrimination by Cleary, Plaintiff instead points only to her subjective beliefs and speculation that her sex and age were the reasons for her termination. The law is

clear, however, that "[c]onclusory assertions, supported only by [the] plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008); *Adams*, 179 Fed. Appx. at 275. Accordingly, Plaintiff cannot establish pretext and her sex and age discrimination claims should be dismissed.

### C.   Plaintiff's Sex Hostile Work Environment Claim Also Fails Because She Cannot Establish Severe And Pervasive Conduct Or Respondeat Superior.

In support of Plaintiff's claim that she was subjected to a hostile work environment because of her sex, she relies upon two alleged comments: (1) that Barnes allegedly said Plaintiff would be perceived as a "bitch" because she is a female during the time of Plaintiff's promotion to director of food services,[3] and (2) that in mid-June 2021, Facilities Manager George Horn allegedly laughingly expressed, "that's why a woman shouldn't do a man's job." (**Ex. 9**, Hewitt at 22-23.) She never reported either comment to human resources for investigation, and these are the only two comments of this nature that she alleges to have been subjected to in her almost five years of employment with Cleary. (**Ex. 9**, Hewitt at 23, 25; **Ex. 6**, Bateman at 19.)

To establish a sex hostile work environment claim, Plaintiff must prove that she was subjected to harassment that was (1) unwelcome, (2) based on her gender

---

[3] Plaintiff gave differing versions of this alleged comment to the EEOC. In her initial Charge, she stated that Barnes was referring to Plaintiff, but in her amended Charge, she stated that Barnes was referring to herself. (**Ex. 12**, Initial/Amended EEOC Charges.)

and (3) sufficiently severe or pervasive to affect a term, condition, or privilege of her employment. *Arnold v. City of Columbus*, 515 F. App'x 524, 535 (6th Cir. 2013); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). Importantly, the civil rights statutes are not general civility codes. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998). "A recurring point in Supreme Court cases is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id*. at 82. Instead, the law requires that Plaintiff show by a preponderance of the evidence that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Harris*, 510 U.S. at 21.

Indeed, the United States Supreme Court has emphasized that "conduct must be <u>extreme</u> to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (emphasis added). Whether conduct is severe or pervasive depends upon the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993). Offhand comments, petty slights, and isolated

incidents (unless extremely serious) do not amount to a hostile work environment. *Stone v. West*, 133 F.Supp.2d 972, 988 (E.D. Mich. 2001).

Plaintiff's claim woefully fails to meet this standard. As set forth above, Plaintiff attempts to rely upon two alleged comments. While her Complaint attempts to enhance the alleged "bitch" comment to include all employees at Cleary, at deposition Plaintiff admitted that the only person Barnes was referring to who would allegedly view her as a "bitch" was Dawnmarie. (**Ex. 9**, Hewitt at 21.) Moreover, Dawnmarie reported to her for "just a period of time," and "moved on to another job prior to [Plaintiff] being terminated." (*Id.* at 22.) Courts in the Sixth Circuit have repeatedly found that infrequent, isolated conduct by of the type alleged by Plaintiff here fails to constitute actionable harassment as a matter of law. *See, e.g. Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (no hostile work environment when over the course of two and a half years, a co-worker told vulgar jokes, twice placed his vibrating pager on the victim's thigh as he passed her in the hall, and pulled at her overalls after she told him she was wearing a thong); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000) (several dirty jokes, a sexual advance, calling plaintiff "hot lips," and commenting about her clothing).[4]

---

[4] See also *Burnett v. Tyco Corp.*, 203 F.3d 980, 981, 984-5 (6th Cir. 2000) (Over a six-month period, Personnel Manager put a pack of cigarettes inside the plaintiff's tank top and brassiere strap while telling a story about a woman he had recently seen; later he made vulgar remarks
Footnote continued on next page …

Additionally, and importantly, Plaintiff never informed human resources that she was subjected to unwelcome sex-based communications or conduct from Barnes, Horn or anyone else. Moreover, even if we assume that the comments occurred, two comments of this nature in five years of employment do not rise to the level of actionable harassment required under the law.

Even if the conduct of which Plaintiff now complains could constitute actionable harassment, which it does not, liability cannot be imputed to Cleary. In *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries v. Ellerth*, 524 U.S. 754, 765 (1998), the U.S. Supreme Court established that where a hostile work environment is alleged by an employee, an employer can further defend itself against liability for the alleged harassment. Cleary bears the burden of proof on the *Faragher–Ellerth* affirmative defense which requires a showing that: (1) the employer exercised reasonable care to prevent and correct promptly any

---

Footnote continued from previous page …

about plaintiff's virginity and about being aroused); *Black v. Zaring Homes, Inc.,* 104 F.3d 822, 823-24, 826 (6th Cir.) (holding behavior merely offensive and insufficient to support hostile environment claim when employee reached across plaintiff, stating "nothing I like more in the morning than sticky buns" while staring at her suggestively; suggested to plaintiff that parcel of land be named "Hootersville," "Titsville," or "Twin Peaks"; and asked "weren't you there Saturday night dancing on the tables?" while discussing property near a biker bar); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 872, 874 (5th Cir.) (holding that several incidents over a two-year period, including the comment "your elbows are the same color as your nipples," another comment that plaintiff had big thighs, repeated touching of plaintiff's arm, and attempts to look down the plaintiff's dress, were insufficient to support hostile work environment claim); *Adusumilli v. City of Chicago*, 164 F.3d 353, 357, 361-62 (7th Cir. 1998) (holding conduct insufficient to support hostile environment claim when employee teased plaintiff, made sexual jokes aimed at her, told her not to wave at police officers "because people would think she was a prostitute," commented about low-necked tops, leered at her breasts, and touched her arm, fingers, or buttocks on four occasions).

sexually harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage of any preventive corrective opportunities provided by the employer or to avoid harm otherwise. To do so, Cleary must establish that it has written policies against sexual harassment, a complaint procedure, and took appropriate actions upon learning of the harassment.

Here, Plaintiff cannot establish that Cleary knew or should have known about the harassing conduct on the part of Horn but failed to take corrective or preventative actions as she never reported any of the allegedly discriminatory comments for which she now complains. *Arnold*, 515 F. App'x at 535;; *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008). Furthermore, it is undisputed that Cleary maintained a reporting procedure of which Plaintiff was aware yet Plaintiff never availed herself of that procedure or otherwise reported any alleged harassment to anyone in management at Cleary. Accordingly, her sex hostile work environment claim fails.

## IV.  <u>CONCLUSION</u>

Wherefore, Cleary University respectfully requests that this Court dismiss Plaintiff's claims with prejudice, and award Cleary University its costs and fees incurred in defending against this action.

JACKSON LEWIS P.C.
BY:  /s/ Marlo Johnson Roebuck
Marlo Johnson Roebuck (P65640)
marlo.roebuck@jacksonlewis.com

Dated:  July 31, 2023

## <u>CERTIFICATE OF SERVICE</u>

On this day July 31, 2023, the undersigned did cause to be filed the foregoing document with the Court using the CM/ECF system, which will send notice of its filing to all counsel of record.

*/s/ Marlo Johnson Roebuck*
Marlo Johnson Roebuck (P65640)

4865-8776-2288, v. 5